```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

DONITA TAYLOR, Administratrix of the
Estate of MATTHEW S. BELFORD,

    Plaintiff

v.                                                  CIVIL ACTION NO. 2:05-0920

COMSAT CORPORATION, a Washington, D.C.
corporation, UNIVERSAL ANTENNAS,
INCORPORATED, a Nevada corporation,
UNIVERSAL ANTENNAS, INCORPORATED,
a Nevada corporation doing business
as COMSAT RSI, UNIVERSAL ANTENNAS
INCORPORATED, LOCKHEED MARTIN
CORPORATION, a Maryland corporation,
and HARRY MORTON, individually,

    Defendants

## MEMORANDUM OPINION AND ORDER

        Pending before the court is plaintiff's motion, filed December 16, 2005, seeking remand of this action to the Circuit Court of Kanawha County.

I.

        This action arises out of the death of plaintiff's son, Matthew Belford, who worked on the construction of the National Radio Astronomy Observatory ("NRAO") facility in Green Bank, West Virginia.

1

The NRAO designs, builds and operates the world's most sophisticated and advanced radio telescopes and is a division of the National Science Foundation ("NSF"), a federal agency. (NRAO's website, http://www.nrao.edu/epo; Comsat's Resp. Memo. at 3.)  In or around 1956, Associated Universities, Inc. ("Associated") entered into a cooperative agreement with the NSF. (Comsat's Resp. Memo. at 3.)  Under the agreement, Associated was to "provide support" for the NRAO.  (Id.)  On December 19, 1990, Associated entered into an agreement with Radiation Systems, Inc., a contractor, to perform the design, fabrication, shipping, site preparation, foundation, construction, alignment, and testing of the NRAO's Robert C. Byrd Green Bank Telescope, which was to be built in Green Bank, West Virginia.[1]  (Id.)  Comsat Corporation ("Comsat") assumed the contractor's role in this agreement in 1998.[2]  (Id.)

According to plaintiff, the individual defendant, Harry Morton, is alleged to have been "employed by defendants as a supervisor," and Belford was "employed by [the corporate]

---

[1] This is the world's largest, fully steerable radio telescope.

[2] Plaintiff represents that Comsat is the general telecommunications unit of Lockheed Martin.  (Pl.'s Reply at 14.) Subsequent to the removal of this action, plaintiff has sought leave to amend her complaint to name, among others, Lockheed Martin Global Telecommunications and Radiation Systems, Inc., as defendants in this action.

2

defendants as a laborer who worked with designing, fabricating, erecting, and painting the National Radio Astronomy Observatory" facility at Green Bank.  (Am. Compl. at ¶¶ 5,6.)  More specifically, it appears that Belford was employed in the capacity of ironworker at certain times in 1998 and 1999. (Comsat Resp. Memo at 3.)

Plaintiff alleges "[t]he defendants knew that the paints it [sic] used contained benzene and that benzene was a known human carcinogen and presented a number of health hazards to Matthew S. Belford, including cancer."  (Am. Comp. at ¶ 10.) Plaintiff represents that the defendants (1) required Belford and other workers to work in an environment which involved inhalation and direct bodily contact with benzene and other paint related chemicals; (2) failed to provide Belford and other workers with proper safety equipment to assure adequate protection from benzene and other paint related chemicals; and (3) failed to warn Belford and other workers of the dangerous nature of benzene and other paint related chemicals to which they were exposed.  (Id. at ¶ 11.)  Plaintiff maintains that as a result of the defendants' conduct Belford was repeatedly exposed to benzene while working on the project and this exposure caused Belford to develop acute myelogenous leukemia, a condition which ultimately claimed his life on April 16, 2004.  (Id. at ¶ 12.)

On June 30, 2005, plaintiff instituted this wrongful death action in the Circuit Court of Kanawha County, West Virginia; however, the complaint filed on that date was not served upon Comsat.  (Comsat's Not. of Remov. at ¶¶ 1-2.)  On or about October 17, 2005, plaintiff filed an amended complaint in state circuit court.  Plaintiff's amended complaint contains two counts.  Count I alleges that defendants violated the West Virginia deliberate intention statute, West Virginia Code section 23-4-2(d)(2), and Count II maintains that the defendants failed to provide Belford with a reasonably safe place to work.

On October 20, 2005, the West Virginia Secretary of State, as statutory agent for Comsat, accepted service of process on behalf of Comsat.  Comsat timely removed the action on November 18, 2005, asserting that jurisdiction was proper pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).[3]  Plaintiff disputes this assertion and has sought remand.

---

[3] The other defendants have not joined in the notice of removal; however, such joinder is not necessary when an action is removed under the federal officer removal statute.  <u>Akin v. Ashland Chemical Co.</u>, 156 F.3d 1030, 1034 (10th Cir. 1998).

II.

The federal officer removal statute is a statutory exception to the well-pleaded complaint rule and permits removal by

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . .

28 U.S.C. § 1442(a)(1).  The statute is rooted in federal supremacy and a mistrust of the ability of state courts to protect federal interests.  As the Supreme Court has explained "Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum."  <u>Willingham v. Morgan</u>, 395 U.S. 402, 407 (1969); <u>see also</u>, 14C Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure, § 3727 ("The rationale for granting a right of removal to federal officers acting under color of office always has been the protection of the exercise of legitimate federal authority by government agents against interference by individual states through their courts.").

Under section 1442(a)(1) a defendant must: (1) be a "person" within the meaning of the statute; (2) act under the direction of a federal officer; (3) show a nexus or "causal

connection" between the alleged conduct and the official authority; and (4) have a colorable federal defense.  <u>Watson v. Philip Morris Companies, Inc.</u>, 420 F.3d 852, 855 (8th Cir. 2005); <u>Virden v. Altria Group, Inc.</u>, 304 F. Supp.2d 832, 843 (N.D. W. Va. 2004)(Keeley, C.J.)(internal citations omitted).  It is the removing defendant's burden to establish federal jurisdiction under the federal officer removal statute.  <u>Winters v. Diamond Shamrock Chemical Co.</u>, 149 F.3d 387, 397 (5th Cir. 1998) (internal citations omitted).  Moreover, "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction."  <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 425 (4th Cir. 1999).

### III.

In its notice of removal Comsat represents that it can satisfy the requirements of the federal officer removal statute.  Comsat maintains that it is a person within the meaning of the statute and asserts that all of the work on the project including the type of paint to be used and the manner of its application was performed pursuant to detailed specifications as set forth in the contract between Comsat and Associated.  Comsat further represents that its work on the project was performed under the direction and control of the Director of the NSF and the Director

of the NRAO.  With respect to Comsat's "colorable federal defense," Comsat contends that it is entitled to the benefit of both the government contractor defense and derivative sovereign immunity.

Plaintiff responds contending that (1) Comsat was not acting under the direction of a federal officer; (2) Comsat cannot establish the required causal nexus between the conduct giving rise to this action and the conduct undertaken at the direction of a federal officer; and (3) both the government contractor defense and derivative sovereign immunity are unavailable to Comsat.[4]

Even assuming that Comsat can demonstrate that it acted under the direction of a federal officer, Comsat cannot satisfy the causal connection requirement.

The Supreme Court has recognized that "[t]o satisfy the [acting under color of office] requirement, the officer must show a nexus, a 'causal connection' between the charged conduct and asserted official authority."  Jefferson County Ala. v. Acker,

---

[4] Plaintiff does not dispute that Comsat may be considered a "person" under the federal officer removal statute as it appears to be well accepted that a corporation may be considered a "person" within the meaning of the statute.  See Watson, 420 F.3d at 863 (corporation considered "person" under the statute); Winters, 149 F.3d at 398 (same).

527 U.S. 423, 431 (1999)(internal citation omitted).  Such a showing is made by a defendant when it demonstrates that "'the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.'"  Watson, 420 F.3d at 861 (quoting Virden, 304 F. Supp.2d at 844).  Addressing the causal connection requirement, the Supreme Court has observed that the defendant "must by direct averment exclude the possibility that it [the state court action] was based on acts or conduct of his not justified by his federal duty."  Mesa v. California, 489 U.S. 121, 132 (1989).

     Plaintiff maintains that for a causal connection to exist in this case, Comsat must provide evidence that the federal government directed it to "deliberately intend to expose the plaintiff's decedent to known carcinogens, to not warn him of the dangers of such exposure, and to not protect him from such exposure."[5]  Such evidence, plaintiff insists, does not exist in this case.  Moreover, plaintiff represents the contract with Associated directed

---

[5] Throughout the briefing plaintiff appears to posit that they have asserted a separate claim based on the defendants' "failure to warn."  While plaintiff has stated that the defendants failed to warn Belford of the risks associated with exposure to benzene and other paint related chemicals, the complaint does not contain a count which separately asserts a failure to warn claim.

8

>the defendants to comply with the Occupational Safety
>and Health Act (OSHA) and the American National
>Standards Institute Safety Code (ANSI) and several
>other safety rules which provide for a safe workplace,
>consistent with West Virginia law.  The contract also
>notes on several instances that the paints and coatings
>are to be applied according to the manufacturer's
>specifications.  These specifications in the MSDS's
>[Material Safety Data Sheets] proscribe the very
>exposure which occurred here.

(Pl.'s Memo. at 12.)

Comsat responds citing case law for the proposition that the federal officer removal statute is to be broadly construed.  Comsat further contends that plaintiff's argument that the nexus has not been satisfied misconstrues the level of proof required to establish federal question jurisdiction.  Comsat asserts "the [c]ourt should examine the broader issues in the case, the overarching governmental involvement, and resolve the disputed issues in favor of the removing party."  According to Comsat, the "'gist of this action centers around' allegations of benzene exposure and whether the paint and painting processes required and monitored by the NRAO at Green Bank were causally related to the plaintiff's decedent's disease." (Comsat's Resp. Memo. at 13.)(quoting <u>Winters</u>, 149 F.3d at 399-400.)

The court finds plaintiff's position to be persuasive.  Comsat is being sued under West Virginia law for deliberately intending Belford's injuries, for failing to provide Belford with

a reasonably safe work environment, and, arguably, for failing to warn Belford. Even assuming that Comsat acted under the direction of the NSF, the NRAO, or their officers, there is no evidence before the court that the federal agencies or their officers exercised direction and control in such a manner as to prevent Comsat from fulfilling its duties to Belford under West Virginia law. See <u>Freiberg v. Swinerton & Walberg Property Services, Inc.</u>, 245 F. Supp.2d 1144, 1155 (D. Colo. 2002)(finding the removing defendants had not satisfied the causal connection requirement and observing that defendants failed to show the agency's "direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards."); see also, <u>Faulk v. Owens-Corning Fiberglass Corp.</u>, 48 F. Supp.2d 653, 663 (E.D. Tex. 1999)(holding claims for alleged failure to warn could not be removed under the Federal Officer Removal Statute inasmuch as "the federal government provided no direction or control on warnings . . .[and] did not prevent Defendants from taking their own safety precautions heeding state-law standards.").

Indeed, plaintiff has identified and interpreted contractual provisions, the interpretation of which Comsat does

not dispute, that suggest the federal entities and their officers directed Comsat to act in a manner that was consistent with fulfilling its alleged duties to Belford under West Virginia law and further suggests that Comsat failed to act in accordance with the directives of the agencies and their officers.  The contract provided, among other things, that OSHA regulations shall be followed, unless Associated's specifications conflicted with the OSHA regulations.  The contract further provided that "[a]ppropriate safety precautions applicable to handling of toxic and flammable materials shall be observed during all operations." (Contract Provisions attached as Ex. A to Pl.'s Memo.)  The safety advice sheet for Interlac 665, one of the paints used in the construction of the Green Bank facility, states that

> The sprayer and assistant should always wear a
> cartridge respirator.  Other people who can smell
> paint should also wear a cartridge respirator or
> carbon mask unless they are sure the solvent
> concentration is below the national occupational
> exposure limit (OES).  Cartridge respirators and
> carbon masks become less efficient with time and
> should be replaced periodically.

(Interlac Safety Advice Sheet, attached as Ex. B to Pl.'s Memo.) Plaintiff maintains that Belford was not provided with an appropriate respirator and has attached affidavits from workers who were employed in the construction of the Green Bank facility

11

at the same time as Belford which represent that they were not provided with a respirator or were provided with an inadequate respirator while working on the construction of the Green Bank facility.  (Affs. attached as Ex. C to Pl.'s Reply Memo.)

Comsat relies on Winters for the proposition that the "gist of this action" arises from Belford's exposure to the paints.  This reliance is misplaced.  In Winters the plaintiff filed suit against the defendants, manufacturers who supplied the federal government with the toxic chemical product Agent Orange.  Id. at 390.  Plaintiff alleged that her exposure to Agent Orange resulted in the contraction of a terminal disease.  Id.  The United States Court of Appeals for the Fifth Circuit upheld the removal observing

> The gist of the action centers around the trace elements of dioxin contained in Agent Orange and whether a causal relationship exists between Winter's terminal disease and her alleged exposure to that dioxin.  We are convinced that the government's detailed specifications concerning the make-up, packaging and delivery of Agent Orange, the compulsion to provide the product to the government's specifications and the on-going supervision . . . is all quite sufficient to demonstrate that the defendants acted pursuant to federal direction and that a direct causal nexus exists between the actions taken under color of federal office and Winter's claims.

Id. at 399-400.

Unlike Winters, the "gist" of this action is not that Belford was exposed to a chemical which the federal government compelled to be produced to its detailed specifications.  Rather, the "gist" of this action is that the harmful exposure to chemicals occurred as a result of the employer's conduct which purportedly violated both West Virginia law and the direction of the federal agency and its officers.

Throughout its brief, Comsat repeatedly mentions that the federal officer removal statute is to be broadly construed, which it says is consistent with both Fourth Circuit and Supreme Court authority.  However, two cases cited by Comsat for this proposition, Willingham v. Morgan, 395 U.S. 402 (1969) and Kolibash v. Comm. on Legal Ethics of West Virginia Bar, 872 F.2d 571, 576 (4th Cir. 1989) both involved claims which called into question the immunity of federal officers, not government contractors, and there is persuasive authority for the proposition that the statute should be construed broadly only when the immunity of federal officers is at issue.  Ryan v. Dow Chemical Co., 781 F. Supp. 934, 943 (E.D.N.Y. 1992)(observing that the Supreme Court's jurisprudence since Willingham has signaled a "narrowing of § 1442"); Frieberg, 245 F. Supp. at 1152 (citing Ryan and concurring that the federal officer removal statute

13

should be "read expansively only when the immunity of individual federal officials, and not government contractors, is at issue.").

Moreover, even when applying a statute that could be characterized as "broad," removal jurisdiction must be strictly construed for the reason that the limited jurisdiction of federal courts "is not to be expanded by judicial decree" since federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). To construe the statute as broadly as Comsat suggests would effectively amend the statute to eliminate the causal connection requirement.

In view of the foregoing, the court finds Comsat has not demonstrated the required causal connection inasmuch as it cannot show that the actions giving rise to this suit were performed pursuant to federal direction.

IV.

It is accordingly ORDERED that plaintiff's motion to remand be, and it hereby is, granted.

   **The Clerk is directed to forward copies of this order to all counsel of record.**

            DATED: November 8, 2006

            _____
            John T. Copenhaver, Jr.
            United States District Judge